UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DANIEL MOVTADY,

Plaintiff,

v.

CAESARS ENTERTAINMENT, INC., AMERICAN WAGERING, INC.,

Defendant.

Case No. 2:26-cv-00614-JAD-EJY

**ORDER**

Pending before the Court are nine discovery motions, eight of which were filed by Plaintiff. The eight motions filed by Plaintiff include the: (1) Motion for Protective Order Regarding Deposition Scheduling (ECF No. 20); (2) Expedited Request for Discovery Conference and Order Governing ESI Production and Preservation Pursuant to ECF No. 19 or in the Alternative Motion to Compel ("ESI Motion") (ECF No. 25); (3) Motion to Compel Production, Complaint Privilege and Redaction Logs, and Amended Discovery Responses (First, Second and Third Discovery Sets) (ECF No. 39); (4) Motion for Clarification or Limited Relief from ECF No. 40 and Subject to Such Relief, for Leave Under LR 7-2(g) to Submit Targeted Supplemental Evidence Concerning ECF Nos. 25 and 39 (ECF No. 49); (5) Motion to Compel Compliance with Rule 45 Subpoena Served on Oracle America Inc. (ECF No. 50); (6) Renewed Motion to Compel Compliance with Rule 45 Subpoenas Served on UKG Inc. and UKG Kronos Systems LLC (together "UKG") (ECF No. 59); (7) Renewed Motion for Leave to File a Narrow Privacy-Redacted Oracle Contract Appendix Under Seal (ECF No. 60), and (8) Motion to Modify the Dispositive Motion Deadline (ECF No. 62). The one motion filed by American Wagering, Inc. and Caesars Entertainment, Inc. (collectively "Defendants") is for a Protective Order (as to Document Request Sets 4-5, Requests for Admission Sets 3-4) (ECF No. 35).

The issues in this single plaintiff wage and hour case are not extraordinary.[1] What sets this case apart is Plaintiff's discovery motions filed over the past five months. While the Court recognizes Plaintiff's *pro se* status and affords him leniency, he is nonetheless required to follow the Court's Local Rules and the Federal Rules of Civil Procedure. *E.g. Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). Under Rule 1 of the Federal Rules of Civil Procedure, all parties are expected to work towards securing "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Since April 2026, well over a thousand pages of motions and accompanying exhibits have been filed on the docket—and this does not include the responses and replies. The eight pending discovery motions filed by Plaintiff exceed 780 pages.[2] ECF Nos. 20, 25, 39, 49, 50 59 60, 62. The prolixity of these filings is antithetical to Rule 1 and has hampered the Court's ability to efficiently resolve the issues presented. As such, the Court notes that while it has considered every argument raised in the briefing, it only discusses those arguments relevant to its decision. *Play Up, Inc. v. Mintas*, 638 F.Supp.3d 1087, 1099 (D. Nev. 2022). In addition, the Court recognizes the parties discuss at length whether Plaintiff complied in good faith with the Court's meet and confer requirement. However, based on the totality of what is presented, the Court finds any meet and confer would have been futile. Thus, the Court proceeds to the merits.

## I. Background

*Pro se* Plaintiff initiated this lawsuit in state court on February 9, 2026 against his former employers alleging a violation of the Equal Pay Act and state law claims for wrongful termination, retaliatory termination, failure to pay wages, retaliation for wage complaints, fraud, intentional infliction of emotional distress, and constructive discharge. ECF No. 1-2 at 13. Defendants timely removed the case on March 4, 2026. ECF No. 1.

---

[1] Plaintiff's 60 page First Amended Complaint (excluding exhibits) demonstrates that he is seeking to recover unpaid wages for a short period of time. ECF No. 32. Plaintiff contends that during this short time period he paid as a non-supervisory employee despite performing supervisory tasks. *Id*. at 48. Though it is clear from the First Amended Complaint that Plaintiff seeks other damages for claims such as constructive discharge, retaliatory termination, and intentional infliction of emotional distress, the wage-based damages he seeks do not exceed $10,000. *Id*. at 56-57.

[2] Not dissimilarly, Defendant's Motion for Protective Order attaches 518 pages of exhibits. ECF No. 35.

The first discovery motion at issue was filed by Plaintiff on Monday, April 13, 2026. ECF No. 20. Through this motion Plaintiff sought to vacate his deposition scheduled for April 16 and reset his appearance for a date after Defendants responded to written discovery. ECF No. 20 at 1-2. The Court denied Plaintiff's request for expedited consideration finding it could not rule on the protective order prior to the deposition, and encouraged the parties to meet and confer on the matter. ECF No. 22. It appears the parties did not come to an agreement and Plaintiff's deposition proceeded as scheduled on April 16, 2026. ECF No. 23 at 1. After the deposition, Defendants filed a response to ECF No. 20 arguing the motion was moot because Plaintiff appeared for his deposition. *Id.* However, Defendants admit, and Plaintiff highlights in Reply, that the deposition was not completed and will be continued sometime in the future. *Id.*, ECF No. 24.

On April 28, 2026, Plaintiff filed an Expedited Request for Discovery Conference and Order Governing ESI Production and Preservation Pursuant to ECF No. 19 or in the Alternative Motion to Compel (the "ESI Motion"). ECF No. 25. Through this motion Plaintiff seeks a court ordered protocol governing the production of four categories of electronically stored information ("ESI") put at issue by Plaintiff's first set of discovery requests. *Id.* at 8-14. Broadly speaking, Plaintiff claims he is entitled to metadata surrounding the timing and internal routing of emails and his time off requests submitted through a third party program sponsored by UKG and used by Defendants. *Id.* Defendants argue in response they have produced all relevant metadata and Plaintiff does not demonstrate a need for anything further. ECF No. 28 at 12-18.

On June 11, 2026, Defendants file a motion for protective order seeking to relieve them from responding to Plaintiff's Fourth and Fifth Sets of RFPs as well as his Third and Fourth Sets of RFAs. ECF No. 35. Defendants tally the disputed discovery requests as comprising 286 of the 428 total discovery requests propounded by Plaintiff over a two month period. *Id.* at 1-2. Defendants contend Plaintiff used artificial intelligence ("AI") to communicate with counsel and generate discovery requests, arguing that many of the discovery requests are duplicative, overbroad, and untethered to the facts of the case.[3] *Id.* at 2.

---

[3] In its review of discovery the Court found several of requests concern Defendants' HVAC system that appear to relate to Plaintiff's complaints about the temperature at his workstation. ECF No. 35-2 at 159-61. The Court finds

On June 23, 2026 Plaintiff filed a Motion to Compel regarding Defendants' privilege and redaction logs. ECF No. 39 at 6-11. The next day the Court ordered that no further Motions related to discovery be filed until the already pending were ruled upon. ECF No. 40. Plaintiff complied for six weeks, but on August 7, 2026, he filed two new motions. ECF Nos. 44, 45. The same day, the Court issued an order explaining that Plaintiff was not precluded from seeking compliance with subpoenas issued to nonparties and that additional discovery motions could be filed once the pending motion were resolved. ECF No. 47. Less than three weeks later, Plaintiff filed four discovery motions related to subpoenas served on Oracle and UKG. ECF Nos. 49, 50, 51, 53. The Court denied Plaintiff's Motion connected with UKG (based on the prolixity of Plaintiff's filing which exceeded 140 pages and the lack of any indication that the Motion was served on UKG) (ECF No. 56). Plaintiff renewed this motion one day later. ECF No. 59. Plaintiff also filed a motion to seal what appears to be documents he received from Oracle in response to his subpoena. ECF No. 60. Lastly, Plaintiff filed a motion seeking to alter the deadline to file dispositive motions. ECF No. 62.

## II. Legal Standard

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citations and quotations omitted). The scope of discovery, as defined by Federal Rule of Civil Procedure 26(b)(1), is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). Discovery that is "not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)." *Oppenheimer*, 437 U.S. at 351-52. The District of Nevada, and other courts within the Ninth Circuit hold that when a discovery request is not relevant on its face, the party seeking discovery has the burden of showing relevance. *E.g. Snow Covered Cap., LLC v. Fonfa*, Case No. 2:22-cv-1181-CDS-BNW, 2024 WL 3398343, at *3 (D. Nev. July 12, 2024)[4]; *Hubbs v. Big Lots Stores, Inc.*, Case No. LA CV 150-1601

---

neither the HVAC related discovery nor the climate at Plaintiff's workstation is at issue. This is one example of how Plaintiff's discovery has strayed from the issues presented in the First Amended Complaint.

[4] Citing *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-cv-00342-JCM-CWH, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014), *aff'd*, Case No. 2:12-cv-00342-JCM-CWH, 2014 WL 3592655 (D. Nev. July 21, 2014).

JAK (ASx), 2019 WL 12536541, at *7 (C.D. Cal. July 2, 2019); *Rabb v. Figueroa*, Case No. 1:23-CV-00843-JLT-SAB (PC), 2024 WL 4121903, at *3 (E.D. Cal. Sept. 9, 2024).

Further, discovery must be proportional to the needs of the case in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Proportionality focuses on the marginal utility of the discovery being sought." *Guerrero v. Wharton*, Case No. 2:16-cv-01667-GMN-NJK, 2017 WL 7314240, at *2 (D. Nev. Mar. 30, 2017) (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 180 F.Supp.3d 273, 280 n.43 (S.D.N.Y. 2016)).

As aptly put by the District of Maryland, litigants tend to focus only on "the party seeking discovery's perceived 'right' to all information relating to the broad 'subject matter' of the litigation, without any reflection as to the real usefulness of the information sought…" *Thompson v. Dep't of Hous. & Urb. Dev.*, 199 F.R.D. 168, 171 (D. Md. 2001). However, this view of discovery ignores the proportionality requirement. Indeed, "the Supreme Court and the Advisory Committee on the Civil Rules have encouraged trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse" since the late 1970s. *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016). The more recent "2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id.* (internal citations and quotations omitted). At their core, the changes to the Federal Rules of Civil Procedure have been designed to curtail the "legal culture that embraces the leave no stone unturned and scorched earth approach to discovery." *Id.*

## III. Discussion

When parties seek relief from the Court, they must clearly present what it is they are seeking. "[I]t is not the responsibility of the judiciary to sift through scattered papers in order to manufacture arguments for the parties." *Agarwal v. Oregon Mut. Ins. Co.*, Case No. 2:11-cv-01384-LDG-CWH, 2013 WL 211093 at *3 (D. Nev. Jan. 18, 2013) (internal citation omitted). After reviewing the totality of what has been presented, it remains unclear to the Court what Plaintiff is seeking other

than more discovery. Plaintiff's Reply briefs fail to coherently respond to the arguments and representations made by Defendants. The enormity of what has been presented to the Court makes it difficult, and in some ways impossible, to meaningfully resolve the pending motions. Nevertheless, it is clear Plaintiff has taken the "leave no stone unturned" approach to discovery. However, nowhere in the extensive motion practice does Plaintiff explain why the discovery at issue is proportionate to his claims. And to the extent the Court and Defendants can rationalize some tangential relevance, Plaintiff fails to show the marginal utility of the discovery sought.[5]

a. An ESI Protocol is Unwarranted; Plaintiff does not Demonstrate a Particularized Need for Metadata.

As explained in *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 246 (S.D. Cal. 2015), a party seeking metadata must show "a particularized need …, not simply a generalized view of its importance." (Citations omitted.) The court explained that (1) "absent a showing of special need and relevance a responding party should not be required to preserve, review, or produce deleted, shadowed, fragmented, or residual data or documents," and (2) "unless it is material to resolving the dispute, there is no obligation to preserve and produce metadata absent agreement of the parties or order of the court." *Id.* (citations omitted).

The Court further reminds Plaintiff that, as the party seeking discovery, he must generally "rely on the representations of the producing party or its representative that it is producing all responsive, relevant, and non-privileged discovery... That is the way our good faith discovery system works." *PlayUp Inc. v. Mintas*, 350 F.R.D. 47, 51 (D. Nev. 2025) (internal citation and quotation omitted). This is especially true when ESI is sought because the producing parties "are best situated to evaluate the procedures, methodologies, and technologies as to their own electronically stored information." *Id.* (internal citations and quotations removed).

As reasonably understood by the Court, Plaintiff's ESI Motion asks the Court to compel the production of metadata reflecting a level of granular detail that is grossly disproportionate to the

---

[5] Plaintiff does not comply with the District of Nevada's Local Rule 26-6(b) which requires that discovery motions "must set forth in full the text of the discovery originally sought and any response to it." Given the extensive nature of what is at issue, the Court appreciates that strict compliance may not have been feasible. However, at times, Plaintiff fails to provide clear citations to exhibits that identify the discovery requests at issue.

issues presented in this case. Plaintiff originally identified four categories of information he was seeking; however, his Reply brief demonstrates one category is no longer at issue (ECF No. 29 at 5), thus only three are discussed by the Court. The first category encompasses metadata related to emails.[6] ECF No. 25 at 8. Plaintiff says he needs this information "to establish chronology, verify preservation-hold compliance, and authenticate routing of internal communications." *Id*. at 9. The second category seeks UKG workforce management records in native form[7] ("UKG data") so that Plaintiff can determine whether any manager employed by Defendants viewed or acted upon Plaintiff's time off request within an eight-day period. *Id*. at 10. Plaintiff also seeks data demonstrating whether any of his managers viewed or granted other unidentified employees' potential time off requests. *Id*. The third remaining category seeks "confirmation that relevant custodians were instructed to preserve work-related text messages…concerning Plaintiff." *Id*. at 12.

In response, Defendants say they have responded to each of the categories identified.[8] With respect to the email transmission records, Defendants submit they have produced relevant data, including the dates and times emails were sent.[9] ECF No. 28 at 9. Regarding UKG records, Defendants state they have produced records identifying: "(1) the dates on which the PTO requests at issue were created within the UKG system; (2) who created each such request; (3) the status of each such request (e.g., "Submitted" or "Approved"); and (4) the identify of any supervisor who approved or otherwise decisioned the PTO requests at issue." *Id*. at 10. To the extent Plaintiff is seeking additional information, Defendants submit they have none. *Id*. Lastly, in response to the text message category, Defendants do not state whether they have produced any and instead state they are "aware of no evidence suggesting that any pertinent text messages have been deleted or otherwise." *Id*.

---

[6] Plaintiff seeks message tracking logs, delivery confirmations, read receipts, journal entries, applicable retention policy and litigation hold records, and any logged deletion events for an identified time period. ECF No. 25 at 8.

[7] The second category seeks records "sufficient to establish whether Ms. Villa, Mr. Suh, Mr. Shepart, or Mr. Jorge approved, denied, or otherwise acted on other Ojos Locos/Hotel Jefe employees' PTO requests" during the relevant time frame.

[8] At one point, Defendants highlight "Plaintiff's production of metadata has been non-existent," stating that he has only produced one flattened pdf and one excel spreadsheet in discovery. ECF No. 208 at 9. Defendants do not identify what "metadata" they seek, if any, from Plaintiff and the Court cannot fathom would be desired.

[9] Defendants state that they have provided, in detail, "(A) Basic Email Information: From, To, CC, Subject, Sent Date/Time, Attachments (Attachment Name, Attachment Count); (B) Email Body: Message Body (text/HTML); (C) File-Level Metadata (File Name, File Type, File Size); and (D) Threading (Basic): Message-ID." ECF No. 28 at 9.

Plaintiff insists he has demonstrated a specific need for metadata, essentially because the information apparently could be relevant to proving his claims; however, nowhere does Plaintiff support how or why the information he has received from Defendants is inadequate for this purpose. *See* ECF No. 29. For example, Plaintiff does not say why he needs more information than "to," "from", "date" and "time" each email was in order to "establish chronology." Similarly, Plaintiff does not argue why he needs additional records from UKG to prove any element of his claims.

The foregoing demonstrates there is no factual support for an ESI protocol. Defendants demonstrate they have produced all the information reasonably available and proportionate to the needs of this case. The Court denies Plaintiff's request to compel production of additional metadata.

b. Plaintiff is Not Entitled to "Discovery on Discovery."

Discovery into a party's discovery process—known as "discovery on discovery" is a highly disfavored practice. *E.g. Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019). Requests for such information are to be "closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121-LAK-JCF, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014).

Plaintiff has sought this type of information throughout the discovery process. For example, in Plaintiff's ESI Motion he states he is seeking several identified categories of information in part to confirm Defendants' have complied with their obligation to preserve evidence. *See* ECF No. 25 at 8, 13-14. Likewise, the Court's review of the discovery at issue through Defendant's Motion for Protective Order demonstrates Plaintiff has propounded RFPs and RFAs regarding Defendants' litigation activities. ECF No. 35-3 at 9 (RFA No. 14 seeks Defendants to admit or deny whether they issued a litigation hold). Plaintiff contends there are "concrete deficiencies" in Defendants' production that merit the discovery he seeks. ECF No. 36 at 7. Plaintiff provides the Court with a bulleted list of these supposed "deficiencies." *Id.* at 7-9. The Court reviewed Plaintiff list and finds none of the examples cast doubt on Defendants' representations. The Court finds Defendants have complied with their obligations under the Federal Rules throughout the discovery process. The Court denies Plaintiff's requests to engage in discovery into Defendants' discovery process.

c. Plaintiff has Propounded Duplicative and Improper Discovery Requests.

Courts "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C). Further relevant here is the proposition that RFAs and RFPs "may be considered 'unduly burdensome when they are excessive in number, complicated, or ambiguous.'" *Dang v. Johnson*, Case No. 3:21-CV-05544-RJB, 2023 WL 157616, at *3 (W.D. Wash. Jan. 11, 2023) (quoting *Sparton Corp. v. United States*, 77 Fed.Cl. 10, 20 (2007)).

After responding to 135 of Plaintiff's discovery requests, Defendants seek a protective order precluding the need to respond to Plaintiff's recently propounded 93 RFPs and 193 RFAs. ECF No. 35 at 8. Under the circumstances presented, the Court finds the sheer volume of the requested discovery is unduly burdensome and disproportionate to the needs of this case. As stated, Plaintiff brought a lawsuit based on alleged violations of the Equal Pay Act and various state laws related to wage payment and his termination. ECF No. 32 at 1. Cases such as this—involving a single Plaintiff with a limited number of claims—do not support the need for hundreds of discovery requests. *Stokes v. Interline Brands Inc*, Case No. C-12-05527 JSW (DMR), 2013 WL 6056886, at *3 (N.D. Cal. Nov. 14, 2013) (collecting cases).

The Court recognizes Plaintiff's *pro se* status and understands he may lack the ability to craft a limited set of narrowly tailored discovery requests. Nevertheless, the Court finds the protective order is appropriately granted. In fact, the Court's review (albeit not of every discovery request in detail) demonstrates that many are improper in scope or content, grossly overbroad, and or facially, unduly burdensome.[10] For example, Defendants explain they previously responded to some of the same substantive RFAs, providing citations to these responses. *See* ECF No. 35 at 8-9.

To the extent Plaintiff is using AI to assist him in preparing discovery requests, he must ensure that the requests propounded are not duplicative of discovery previously conducted and is proportionate to the needs of this case. Discovery in this case must be reasonably related to the

[10] *See* ECF No. 35-3 at 7-8 (seeking admissions related to the way metadata described in a declaration by defense counsel was produced), 25-26 (seeking information already produced according to Defendants in their Motion at ECF No. 35 at 8); 29 (seeking information related to the drafting of a hypothetical stipulated protective order); 51-87 (asking Defendants to admit whether documents already produced contain redactions or specific clauses).

limited issues being litigated. This means it must relate to Plaintiff's Equal Pay Act and state law claims relating to his wages and discharge. Thus, this does not support requests that seeks all complaints and grievances ever made about a particular manager. *See* ECF No. 35-3 at 43. Defendants have responded to 41 RFAs and 76 RFPs. ECF No. 35 at 4. A review of the scope of that discovery demonstrate Plaintiff has received information related to the staffing at the sports book location where he worked, a topic related to his lawsuit. ECF No. 35-2 at 214. The pending 286 discovery requests repeat—if not exactly at least substantively—the same subject matters. *Compare* ECF No. 35-3 at 33, 39 (RFP Nos. 31 and 39 in Plaintiff's Fifth Set of RFAs seeking communications sent and received by a particular manager) *with* ECF No. 35-2 at 43 (RFP No. 27 in Plaintiff's First set of RFPs seeking the same communications). The pending 286 are simply excessive. *Dang*, 2023 WL 157616, at *3 (citing *Mitchell v. Yeutter*, 1993 WL 139218 (D. Kan. 1993) (finding 90 requests for admission excessive and limiting propounding party to 40 requests)). However, considering the total number of RFPs and RFAs Plaintiff has already propounded, but believing there may be limited additional information not related to metadata or UKG/Oracle records into which Plaintiff may want to inquire, the Court finds it appropriate to permit Plaintiff to propound 10 RFPs and 10 RFAs that do not duplicate previously propounded discovery requests.

In addition, a number of Plaintiff's RFAs are substantively improper as they seek information about the contents and technical nature of documents that is not properly addressed through RFAs. *See* ECF No. 35-3 at 51-84. A proper RFA will address "facts, the application of law to facts, or opinions about either; and the genuineness of any described document." Fed. R. Civ. P. 36(a)(1). An RFAs seeking the disclosure of privileged communications or attorney work product is beyond the scope of what is properly sought through any discovery method unless a privilege has been waived or the circumstances established by case law support disclosure of work product (*see* Fed. R. Civ. P. 26(b)(3)), neither of which apply here. RFAs that ask Defendants to admit whether certain words or passages are present in a document are similarly improper. *E.g. K.C.R. v. Cnty. of Los Angeles*, Case No. CV 13-3806 PSG (SSx), 2014 WL 3433772, at *4 (C.D. Cal. July 14, 2014). Further, several RFPs concern metadata (ECF No. 35 at 9-10). As discussed above, Plaintiff does not demonstrate a need for that metadata especially in light of what Defendants already produced.

*See* ECF No. 28 at 9-10. Thus, the Court grants Plaintiff's Motion for Protective Order (ECF No. 35) except to allow Plaintiff to propound the limited additional discovery as stated *supra* at page 10.

d. Plaintiff Does Not Identify a Deficiency in Defendants' Privilege Log.

Fed. R. Civ. P. 26(b)(5) requires that if a party "withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material" the party must document the withholding on a privilege log." Plaintiff first contends the privilege log fails to meet the standard required because Defendants did not include a specific document referred to as the "Daniel ojos statement." ECF No. 39 at 6. Though the document is discussed, Plaintiff never says why Danial ojos statement, which relates to a complaint Plaintiff lodged about another employee, and is proportional to the needs of his claims.[11] In the absence of discoverability, the statement not need be listed on the privilege log. *Shreves v. Harris, et. al.*, Case No. CV 18-00097-H-DLC-JTJ, 2021 WL 1222186, at *3 (D. Mont. Apr. 1, 2021) ("if a document would not otherwise be disclosable for an independent reason, such as relevance, the fact that it also would be privileged means it does not have to be included on a privilege log.").

Plaintiff's second argument avers that Defendants made an insufficient entry or entries on their privilege log; however, Plaintiff fails to point the Court to where these deficiencies appear. Plaintiff attaches 324 pages of exhibits to the Motion to Compel but fails to cite where in those pages the Court might locate Defendants' supposed adequate disclosures. ECF Nos. 39-1, 39-2, 39-3, 39-4, 39-5. The Court will not scour Plaintiff's exhibits in an attempt to identify a privilege log entry and determine whether it is adequate. *See Agarwal*, 2013 WL 211093, at *3 (parties cannot expect the court to sift through voluminous discovery to root out the issues at stake).

Third, Plaintiff claims that Defendants' privilege log must identify "the role and privilege-circle basis of non-legal participants." ECF No. 39 at 8. The rules governing what information belongs on a privilege log are well established and require for each listed document: "(1) its type (i.e., letter, memo, notes, etc.), (2) its author, (3) its intended recipients, (4) the names of any other

[11] To the extent Plaintiff may be seeking a Court order compelling production of this document, he does not show why it is in any way related to his case. Plaintiff also does not explain why an objections based on relevance and third party privacy were not justified. ECF No. 39 at 6; *see e.g. Williams v. Garrett*, Case No. 3:22-cv-00264-CLB, 2024 WL 1675445, at *1 (D. Nev. Apr. 18, 2024) (summarizing the standard to compel production of a document).

individuals with access to the document, (5) the date of the document, (6) the nature of the claimed privilege (i.e., attorney-client, work-product, etc.), and (7) a brief summary of the subject matter of the document." *E.g. V5 Techs. v. Switch, Ltd.*, Case No. 2:17-cv-02349-KJD-NJK, 2019 WL 13157472, at *2 (D. Nev. Dec. 20, 2019). Plaintiff does not cite for the Court any entry on Defendants' privilege log that fails to substantially comply with this standard.

Separately, Plaintiff argues Defendants' "redaction log" is defective. While Plaintiff identifies several documents by Bates numbers, he does not describe what is defective about any log entry, identify what redactions he questions, or support the conclusion that any redacted document should be produced in its unredacted form.[12] ECF No. 39 at 8. If Plaintiff is seeking a more detailed "redaction log," there is nothing offered to support such a request. While a court may order the production of a redaction log in appropriate circumstances, those circumstances are not present here. *M.S. v. Angus*, Case No. 2:23-CV-09957-MWF-MAR, 2025 WL 819722, at *5 (C.D. Cal. Feb. 11, 2025) (collecting cases where the Court ordered the creation of a redaction log).

Plaintiff Motion seeking to compel "compliant privilege and redaction logs and amended discovery responses" is denied. Plaintiff offers neither the facts nor law that supports an order requiring Defendants to list a particular non-proportional document on a privilege log, supplement the privilege log based on unidentified alleged insufficient entries, or address the role of any individual who is listed on the log as sending or receiving a document. As for the redaction log, Plaintiff fails to identify any overbroad or questionable redactions.

e. <u>Subpoenas issued to Oracle and UKG</u>.

Plaintiff issued subpoenas to nonparties Oracle and UKG on July 10, 2026. ECF Nos. 50 at 4; 59 at 1. Unsatisfied with the responses from both companies, and after conferring with Oracle and UKG separately over audio calls,[13] Plaintiff filed the pending Motions to Compel demanding more detailed responses or declarations stating that no other responsive information exists.[14]

---

[12] In fact, Plaintiff states that he is not seeking to compel many of the documents he discusses. *Id*.

[13] Plaintiff explains that he conferred only through audio with Oracle and UKG. *See* ECF Nos. 50 at 6, 59 at 3.

[14] Separately, Plaintiff filed a Motion to Seal an appendix of documents apparently in support of his Motion to Compel documents from Oracle. ECF No. 60. The appendix contains documents Oracle produced and marked "confidential." *Id*. Plaintiff contends he filed the appendix of Oracle documents under seal solely because of Oracle's designation, but does not "concede" the "confidentiality designation" is warranted. *Id*. at 2, 5. Though Oracle did not respond to Plaintiff's Motion to Seal, Defendants' filed a Non-Opposition and Joinder to the Motion to Seal

The Court further finds these Motions to Compel are without merit. Well settled law holds the scope of discovery under Rule 45 "is the same as the scope of discovery allowed under Rule 26(b)(1)." *Paws Up Ranch, LLC v. Green*, Case No. 2:12-cv-01547-GMN-NJK, 2013 WL 6184940, at *4 (D. Nev. Nov. 22, 2013) (quoting *Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund,* Case No. 2:10-cv-01385-JCM-PAL, 2011 WL 4573349, *5 (D. Nev. Sept. 29, 2011)). Applying the proportionality and relevancy requirements of Rule 26, the Court finds Plaintiff seeks an order compelling production of documents pertaining to entries and transactions related to his assigned manager and any auditing or archiving of entries made in Oracle and UKG's software. ECF Nos. 64 at 3-4; 59 at 3-7. Plaintiff does not show how these records has any marginal utility to prove his claims related to his wages or discharge.

The Court notes that Oracle and UKG submit they produced all relevant and responsive documents over which they have control. ECF Nos. 64 at 7; 65 at 1-2. With respect to Plaintiff's requests for documents explaining Defendants' rights to access, preserve, and retain entries made by its managers, Oracle says it produced documents including its contract with Defendants and publicly available, general agreements incorporated into the contract. ECF No. 64 at 7. UKG argues the pending motion is moot because the subpoena seeks information in Defendants possession and all responsive documents were delivered to counsel for Defendants who produced them to Plaintiff. ECF No. 65 at 2. In sum, Plaintiff's Reply offers that the production received were not sufficient and he wants detailed declarations from Oracle and UKG explaining the parameters of their search for documents. ECF Nos. 68 at 4-5; 69 at 9-10.

The Court finds nothing in Plaintiff arguments, in light of what Oracle and UKG have demonstrated they produced, support an Order requiring declarations from either entity.[15] In our good faith discovery system, "when a party indicates that a reasonable search was undertaken for documents and that no responsive documents were found (or that all responsive documents were

---

demonstrating good cause supports sealing the appendix of document. ECF No. 67. The Court reviewed the contents of the sealed appendix, the argument made in Defendants' Joinder, and finds the appendix is properly sealed. Thus, Plaintiff's Motion to Seal ECF No. 60 is granted.

[15] In fact, Oracle's response to Plaintiff's Motion to Compel includes a declaration from its Senior Director of eDiscovery and Information Governance, Lisa Ripley, stating "Oracle may provide technical support, but it does not manage a user's data or maintain the customer-specific records that are being sought here." ECF No. 64-1 at 1. This declaration further undermines Plaintiff's arguments.

produced), such representations will generally carry the day." *Mintas*, 350 F.R.D. at 51. Plaintiff's contentions do not cast doubt on the veracity of the statements made to the Court by Defendants or the third-parties. Plaintiff may be unhappy with what he has received from Oracle and UKG. He may even believe he is entitled to more information. However, a parties desire and belief that documents or information exists is insufficient to support a motion to compel. *K.C.R. v. Cnty. of Los Angeles*, Case No. CV 13-3806 PSG (SSX), 2014 WL 12725470, at *8 (C.D. Cal. Aug. 6, 2014) (collecting cases). Plaintiff's Motion to Compel at ECF No. 39 is denied.

f. Plaintiff's Deposition May Proceed.

Plaintiff's Motion for Protective Order at ECF No. 20 seeks the continuation of his deposition until a later date. The Court finds the arguments Plaintiff asserted this Motion are now largely moot. Plaintiff has received substantial discovery from Defendants and thus is able to properly prepare for his continued deposition. Plaintiff's Motion for Protective Order at ECF No. 20 is denied.

g. Discovery and Dispositive Motion Deadlines.

Discovery closed in this matter on August 31, 2026. ECF No. 19. Because the Court has ordered Plaintiff may propound 10 new (non-duplicative) RFAs and RFPs, and Defendants may complete his deposition, discovery is reopened for a period of 60 days after the date of this Order for these purposes only. Plaintiff must serve his RFA and RFP discovery no later than 14 days after the date of this Order. Defendants' Response deadline is 30 days after the date of service. The parties are ordered to exchange proposed dates on which Plaintiff is to appear for deposition, which must take place no sooner than 14 days but no later than 42 days after the date of this Order. **No discovery other than the 10 RFAs, 10 RFPs, and completion of Plaintiff's deposition is to be conducted during the reopened discovery period.**

The dispositive motion deadline is extended to 90 days after the date of this Order. The proposed joint pretrial order is due 120 days after the date of this Order unless a dispositive motion is pending on that date. If a dispositive motion is pending, the due date for the proposed joint pretrial order is suspended and the new due date is 30 days after a decision of the pending motions or until further order of the Court.

h. <u>Requests for Sanctions are Denied at this Time</u>.

The Court finds the complexity of the issue and the delay by the Court in resolving the nine motions addressed above preclude an award of sanctions. However, Plaintiff is warned that continued repetitive motion practice may result in sanctions. *Albritton v. Tiffany & Bosco, P.A.*, Case No. CIV12-924-TUC HCE, 2013 WL 12153571, at *3 (D. Ariz. Apr. 23, 2013) (the filing of a "'voluminous amount of frivolous documents' causing 'unnecessary delay in the proceedings'" may subject a party, whether *pro se* or represented to sanctions).

**IV. Order**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Protective Order Regarding Deposition Scheduling (ECF No. 20) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Expedited Request for Discovery Conference and Order Governing ESI Production and Preservation Pursuant to ECF No. 19 or in the Alternative Motion to Compel (ECF No. 25) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Protective Order (As to Document Request Sets 4-5, Requests for Admission Sets 3-4) (ECF No. 35) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Production, Complaint Privilege and Redaction Logs, and Amended Discovery Responses (First, Second and Third Discovery Sets) (ECF No. 39) is DENIED.

IT IS FURTHER ORDERED Plaintiff's Motion for Clarification or Limited Relief from ECF No. 40 and Subject to Such Relief, for Leave Under LR 7-2(g) to Submit Targeted Supplemental Evidence Concerning ECF Nos. 25 and 39 (ECF No. 49) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Compliance with Rule 45 Subpoena Served on Oracle America Inc. (ECF No. 50) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Renewed Motion to Compel Compliance with Rule 45 Subpoenas Served on UKG Inc. and UKG Kronos Systems LLC (together "UKG") (ECF No. 59) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Renewed Motion for Leave to File a Narrow Privacy-Redacted Oracle Contract Appendix Under Seal (ECF No. 60) is GRANTED. The exhibits filed at ECF No. 61 are and will remain sealed.

IT IS FURTHER ORDERED that Plaintiff's Motion to Modify the Dispositive Motion Deadline (ECF No. 62) is GRANTED to the extent consistent with this Order.

IT IS FURTHER ORDERED that discovery is reopened for the following limited purposes:

- To allow the completion of Plaintiff's deposition. Plaintiff's deposition must be completed no sooner than 14 days but no later than 42 days after the date of this Order.
- To allow Plaintiff to propound 10 RFAs and 10 RFPs. Plaintiff must serve his RFA and RFP discovery no later than 14 days after the date of this Order. Plaintiff must review the discovery he has previously propounded to ensure his requests are not duplicative and that they comply with the Federal Rules of Civil Procedure 34 and 36. Defendants' Responses are due 30 days after service of Plaintiff's discovery.

IT IS FURTHER ORDERED the last day to file dispositive motions is 90 days after the date of this Order. The joint pretrial order is due 120 days from the date of this order; however, a dispositive motion is pending, the due date for the proposed joint pretrial order is suspended and the new due date is 30 days after a decision of the pending motions or until further order of the Court.

Dated this 30th day of September, 2026.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE